Jose L. Linares
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
4 Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 622-4444
jlinares@mccarter.com
mmakhail@mccarter.com


*Attorneys for Plaintiffs AbbVie Inc. and Allergan Pharmaceuticals International Limited*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABBVIE INC. and ALLERGAN PHARMACEUTICALS INTERNATIONAL LIMITED,<br><br>               *Plaintiffs*,<br><br>     v.<br><br>APOTEX INC.,<br><br>          *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.: _____ |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiffs AbbVie Inc. ("AbbVie") and Allergan Pharmaceuticals International Limited ("Allergan") (collectively, "Plaintiffs"), by its attorneys, bring this action against Defendant Apotex Inc. ("Apotex") and allege as follows:

## <u>NATURE OF THE ACTION</u>

1.       This is a civil action for patent infringement of U.S. Patent Nos. 12,090,148 ("the '148 patent"), 12,350,259 ("the '259 patent"), 12,383,545 ("the '545 patent"), and 12,465,598 ("the '598 patent") (collectively, "the Patents-in-Suit") arising under the United States Patent Laws, Title 35, United States Code, § 1, *et seq.*, and in particular under 35 U.S.C. § 271, and the

1

Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This action relates to Apotex's recent submission to the United States Food and Drug Administration ("FDA") of an Abbreviated New Drug Application ("ANDA") seeking approval to market generic versions of Plaintiffs' commercial pharmaceutical product QULITPA® (atogepant) oral tablets in 10 mg, 30 mg, and 60 mg dosage forms ("QULIPTA® Tablets") submitted under New Drug Application ("NDA") No. 215206, prior to the expiration of patents listed in the *Approved Drug Products with Therapeutic Equivalence Evaluations* (an FDA publication commonly known as the "Orange Book") for QULIPTA® Tablets. Apotex has submitted ANDA No. 220979 ("Apotex's ANDA"), which seeks approval to market its generic version of QULIPTA® Tablets, atogepant oral tablets, 10 mg, 30 mg, 60 mg ("Apotex's generic products"), prior to the expiration of the Patents-in-Suit.

2.      Apotex has infringed one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(A) by virtue of its filing of ANDA No. 220979 seeking FDA approval for the commercial manufacture, use, import, offer for sale, and/or sale in the United States of Apotex's generic products prior to the expiration of the Patents-in-Suit, or any extensions thereof. Apotex will infringe one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (c) should it engage in the commercial manufacture, use, offer for sale, sale, distribution in, or importation into the United States of Apotex's generic products prior to the expiration of the Patents-in-Suit, or any extensions thereof.

## THE PARTIES

3.      Plaintiff AbbVie is a corporation organized and existing under the laws of Delaware, with its corporate headquarters at 1 North Waukegan Road, North Chicago, Illinois 60064. AbbVie holds NDA No. 215206 for QULIPTA® Tablets.

4.      AbbVie is a global research and development-based biopharmaceutical company committed to developing innovative therapies for some of the world's most complex and critical conditions. The company's mission is to use its expertise, dedicated people, and unique approach to innovation to markedly improve treatments across therapeutic areas, including migraine treatment.

5.      AbbVie markets, distributes, and sells therapeutic drug products, including QULIPTA® Tablets, in this judicial district and throughout the United States.

6.      Plaintiff Allergan is a corporation organized and existing under the laws of Ireland, with a principal place of business at Clonshaugh Business & Technical Park, Dublin 17, Ireland D17 E400. Allergan is the assignee of the '148, '259, '545, and '598 patents. Allergan is an indirectly wholly owned subsidiary of AbbVie.

7.      Plaintiffs allege the following about Apotex on information and belief formed after a reasonable inquiry.

8.      Apotex is a corporation organized and existing under the laws of Canada, having a principal place of business at 150 Signet Drive, Toronto, Ontario, Canada M9L 1T9.

9.      Apotex is in the business of, *inter alia*, manufacturing, marketing, and selling generic copies of branded pharmaceutical products throughout the United States, including in this judicial district.

10.      Following any FDA approval of Apotex's ANDA, Apotex will distribute and sell the proposed Apotex generic products described in Apotex's ANDA throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

13.     This Court has personal jurisdiction over Defendant Apotex. Apotex is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products. Apotex directly, or indirectly, develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. Apotex has purposefully conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Apotex's generic products upon approval of Apotex's ANDA.

14.     Apotex directly or indirectly currently sells significant quantities of generic drug products and derives substantial revenue from the sale of those products in the United States and in this judicial district. Apotex's website states: "We deliver a broad portfolio of generic, biosimilar, and specialty pharmaceuticals, backed by global R&D strength and America-focused supply reliability." https://www.apotex.com/us (last visited Dec. 11, 2025). Further, according to Apotex's website, Apotex supplies "high-quality generic medicines… for patients across the US." https://www.apotex.com/us/portfolio (last visited Dec. 11, 2025).

15.     Apotex's website further states that Apotex is "the leader in Canadian generics pharmaceuticals and top 5 in the United States," having "an extensive portfolio of high-quality generic medicines and a robust R&D pipeline" with "~460 generic products." https://www.apotex.com/global/portfolio/generics (last visited Dec. 11, 2025). Apotex states it is "a top-5 supplier of generic medications in the United States, and a partner of choice in the

Americas for pharmaceutical licensing and product acquisitions."
https://www.apotex.com/global/about-us/our-impact (last visited Dec. 11, 2025).

16.    Apotex's ANDA filing regarding the Patents-in-Suit relates to this litigation and is substantially connected with this judicial district because it predicts Apotex's intent to market and sell Apotex's generic products, including Apotex's generic versions of Plaintiffs' QULIPTA® Tablets, in this judicial district.

17.    On information and belief, Apotex is a prime actor in the drafting, submission, approval and maintenance of ANDA No. 220979.

18.    Following FDA approval of ANDA No. 220979, Apotex will import, market, distribute, offer for sale, and/or sell Apotex's generic products described in ANDA No. 220979 throughout the United States, including in New Jersey and will derive substantial revenue from the use, consumption, or sale of Apotex's generic products in the state of New Jersey.

19.    If ANDA No. 220979 is approved, Apotex's generic products will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by healthcare providers practicing in New Jersey; administered by healthcare providers located within New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on New Jersey.

20.    If ANDA No. 220979 is approved, Plaintiffs will be harmed by the marketing, distribution, offer for sale, and/or sale of Apotex's generic products, including in New Jersey.

21.    This Court also has personal jurisdiction over Apotex because, *inter alia*, Apotex has availed itself of this forum previously for the purpose of litigating a patent dispute. Apotex has been sued multiple times in this district without challenging personal jurisdiction and/or has filed counterclaims in this district. *See, e.g.*, *Am. Regent, Inc. f/k/a Luitpold Pharms., Inc. v. Somerset Therapeutics, LLC, et al.*, No. 24-1022, D.I. 51 (D.N.J. July 11, 2024); *Am. Regent, Inc. f/k/a*

*Luitpold Pharms., Inc. v. Apotex Inc. et al.*, No. 24-2268, D.I. 18 (D.N.J. May 2, 2024); *Supernus Pharms., Inc. v. Apotex Inc., et al.*, No. 22-322, D.I. 20 (D.N.J. July 21, 2022); *Supernus Pharms. Inc. v. Apotex Inc., et al.*, No. 20-7870, D.I. 12 (D.N.J. Sep. 4, 2020); *Patheon Softgels Inc., et al. v. Apotex Inc., et al.*, No. 17-13819, D.I. 20 (D.N.J. Mar. 9, 2018); *Boehringer Ingelheim Pharms., Inc., et al. v. Apotex Inc., et al.*, No. 18-11350, D.I. 12 (D.N.J. Sep. 4, 2018); *Dexcel Pharma Techns. Ltd., et al. v. Apotex Corp., et al.*, No. 17-2423, D.I. 10 (D.N.J. July 17, 2017); *AstraZeneca AB, et al. v. Apotex Corp., et al.*, No. 15-8492, D.I. 7 (D.N.J. Dec. 16, 2015).

22.    For these reasons and for other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over Apotex.

23.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Apotex is incorporated in Canada and may be sued in any judicial district in the United States, and for all the reasons set forth above.

## FACTUAL BACKGROUND

## QULIPTA® and the NDA

24.    AbbVie is the holder of New Drug Application ("NDA") No. 215206 for QULIPTA® (atogepant) tablets in 10 mg, 30 mg, and 60 mg dosage forms.

25.    The FDA approved NDA No. 215206 on September 28, 2021.

26.    The FDA Orange Book for NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, 60 mg, lists the '148 patent, the '259 patent, the '545 patent, and the '598 patent, as well as U.S. Patent Nos. 8,754,096 ("the '096 patent"), 9,499,545 ("the '9545 patent"), 9,850,246 ("the '246 patent"), and 10,117,836 ("the '836 patent").

27.    QULIPTA® Tablets are approved for the preventive treatment of migraine in adults. Atogepant is the active ingredient of QULIPTA® Tablets. Atogepant is a calcitonin gene-related (CGRP) receptor antagonist.

28.    Migraine is a debilitating disease. Migraine impacts more than 37 million men, women, and children in the United States. Migraine costs millions of dollars each year in the United States due to direct medical expenses and lost productivity. Migraine is also associated with other illnesses.

29.    For episodic migraine, the recommended dose of QULIPTA® Tablets is 10 mg, 30 mg, or 60 mg taken orally with or without food, once daily. For chronic migraine, the recommended dose of QULIPTA® Tablets is 60 mg taken orally with or without food, once daily. For patients who concomitantly use strong CYP3A4 inhibitors, the recommended dose is 10 mg once daily. The FDA approved the inclusion of this safe and effective dosing regimen for QULIPTA® for patients who concomitantly use strong CYP3A4 inhibitors, and information concerning these patients is included in the QULIPTA® Label. For patients with severe renal impairment or end-stage renal disease, the recommended dose is 10 mg once daily to prevent episodic migraine. The FDA approved the inclusion of this safe and effective dosing regimen for QULIPTA® for patients with severe renal impairment or end-stage renal disease, and information concerning these patients is included in the QULIPTA® Label.

30.    The QULIPTA® Label includes information regarding "Liver Enzyme Elevations." Specifically, the QULIPTA® Label reports that in three clinical trials, Study 1, Study 2, and Study 3, "the rate of transaminase elevations over 3 times the upper limit of normal was similar between patients treated with QULIPTA (0.9%) and those treated with placebo (1.2%)." The QULIPTA® Label also includes information regarding "Decreases in Body Weight." In Study 1, Study 2, and

Study 3, "the proportion of patients with a weight decrease of at least 7% at any point was 2.5% for placebo, 3.8% for QULIPTA 10 mg, 3.2% for QULIPTA 30 mg, and 5.3% for QULIPTA 60 mg."

31.     To date, only two orally available CGRP receptor antagonists have been approved by FDA for preventive treatment of migraine. The prescribing information for the other, NURTEC® ODT, states that use of the drug should be avoided in patients who concomitantly use strong CYP3A inhibitors. It also states that use of the drug should be avoided in patients with end-stage renal disease. Thus, QULIPTA® Tablets are the only orally available CGRP receptor antagonist in the United States indicated for preventive treatment of migraine in patients who concomitantly use strong CYP3A inhibitors or with end-stage renal disease. The NURTEC® ODT Label is silent on transaminase elevations and a weight decrease upon treatment with NURTEC® ODT.

32.     QULIPTA® Tablets are marketed and sold in the United States by AbbVie.

**The Patents-in-Suit**

33.     The '148 patent, titled "Treatment of Migraine," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on September 17, 2024. A true and correct copy of the '148 patent is attached as Exhibit A.

34.     Allergan is the assignee of the '148 patent through assignment as recorded by the USPTO at Reel 62450, Frame 0822.

35.     The '148 patent currently expires on July 29, 2041.

36.     The '148 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, and 60 mg.

37.     The '259 patent, titled "Methods of Treating of Migraine," was duly and legally issued by the USPTO on July 8, 2025. A true and correct copy of the '259 patent is attached as Exhibit B.

38.     Allergan is the assignee of the '259 patent through assignment as recorded by the USPTO at Reel 66665, Frame 0592.

39.     The '259 patent currently expires on May 11, 2043.

40.     The '259 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablet, 10 mg.

41.     The '545 patent, titled "Treatment of Migraine," was duly and legally issued by the United States Patent and Trademark Office on August 12, 2025. A true and correct copy of the '545 patent is attached as Exhibit C.

42.     Allergan is the assignee of the '545 patent through assignment as recorded by the USPTO at Reel 71617, Frame 0585; and Reel 71552, Frame 0563.

43.     The '545 patent currently expires on June 6, 2039.

44.     The '545 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, and 60 mg.

45.     The '598 patent, titled "Methods of Treating Migraine," was duly and legally issued by the United States Patent and Trademark Office on November 11, 2025. A true and correct copy of the '598 patent is attached as Exhibit D.

46.     Allergan is the assignee of the '598 patent through assignment as recorded by the USPTO at Reel 70393, Frame 0388.

47.     The '598 patent currently expires on September 27, 2042.

48. The '598 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg.

**Apotex's ANDA No. 220979**

49. On information and belief, Apotex filed ANDA No. 220979 with the FDA under 21 U.S.C. § 355(j) to obtain FDA approval for the commercial manufacture, use, import, offer for sale, and/or sale in the United States of atogepant oral tablets, 10 mg, 30 mg, 60 mg, which are generic versions of AbbVie's QULIPTA® Tablets.

50. AbbVie received a letter sent by counsel for Apotex ("Apotex's Notice Letter"), dated November 12, 2025, purporting to be a notice letter "[p]ursuant to § 505(j)(2)(B)(ii)-(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95."

51. Apotex's Notice Letter represents that Apotex's ANDA No. 220979 contains a Paragraph IV certification alleging that the claims of the '148, '259, and '545 patents are invalid, unenforceable, and/or will not be infringed by Apotex's generic products.

52. On information and belief, Apotex's Notice Letter and the information contained therein, coupled with regulatory requirements, demonstrate Apotex's infringement of the '148, '259, and '545 patents.

53. Plaintiffs have not yet received a Notice of Paragraph IV Certification regarding Apotex's ANDA No. 220979 for the '598 patent ("'598 Patent Notice Letter") under Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95.

54. On information and belief, Apotex's Notice Letter and the information contained therein, coupled with regulatory requirements, demonstrate Apotex's infringement of the '598 patent.

55.    Plaintiffs have not yet received a Notice of Paragraph IV Certification regarding Apotex's ANDA No. 220979 for the '096, '9545, '246 patent, or '836 patents under Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95. Further, Apotex's Notice Letter does not state or otherwise indicate that Apotex submitted a Paragraph IV certification for the '096, '9545, '246, or '836 patents, each of which is listed in the FDA Orange Book for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, 60 mg. Accordingly, on information and belief, Apotex submitted a Paragraph III certification for the '096, '9545, '246, and '836 patents. Apotex will thus not launch a generic product under ANDA No. 220979 at least before September 28, 2035.

56.    Apotex's purpose in submitting ANDA No. 220979 and a Paragraph IV certification is to market Apotex's generic products before the expiration of the '148, '259, '545, and '598 patents. Apotex intends to market Apotex's generic products before the expiration of the '148, '259, '545, and '598 patents.

57.    To obtain approval of an ANDA for a generic drug, an ANDA applicant must show, *inter alia*, that the generic drug is bioequivalent to its reference listed drug. *See* 21 U.S.C. § 355(j)(2)(A)(iv). If approved, Apotex's generic products will be bioequivalent to AbbVie's QULIPTA® Tablets.

58.    To obtain approval of an ANDA for a generic drug, an ANDA applicant must also show, *inter alia*, that the conditions of use prescribed, recommended, or suggested in the proposed labeling have been previously approved for its reference listed drug. *See* 21 U.S.C. § 355(j)(2)(A)(i). Further, the FDA will refuse to approve an ANDA if the labeling proposed for a generic drug product differs from the labeling approved for its reference listed drug product and such differences make the proposed generic drug product less safe or effective. *See* 21 C.F.R.

§ 314.127(a)(7). On information and belief, if approved, Apotex's generic products will have the same indication and safety and efficacy information as AbbVie's QULIPTA® Tablets.

59.     Apotex's Notice Letter purported to offer confidential access to Apotex's ANDA No. 220979 on terms and conditions set forth in Apotex's Notice Letter ("Apotex's Offer of Confidential Access"). Outside counsel for AbbVie and Allergan negotiated in good faith with counsel for Apotex in an attempt to reach agreement on reasonable terms of confidential access to Apotex's ANDA No. 220979. To date, AbbVie and Allergan have not received access to Apotex's ANDA No. 220979.

60.     Following FDA approval of Apotex's ANDA No. 220979, Apotex will make, use, sell, and/or offer to sell Apotex's generic products throughout the United States, or import such generic products into the United States before the Patents-in-Suit expire. The manufacture, use, offer for sale, sale, and/or importation of Apotex's generic products will directly infringe the Patents-in-Suit.

61.     Following FDA approval of Apotex's ANDA No. 220979, Apotex will actively induce or contribute to the manufacture, use, offer for sale, and/or sale of Apotex's generic products in a manner that infringes the Patents-in-Suit.

62.     Plaintiffs commenced this action within 45 days of receiving Apotex's Notice Letter.

## COUNT I
## INFRINGEMENT BY APOTEX OF THE '148 PATENT

63.     Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

64.     Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '148 patent.

65.     Apotex's Notice Letter states that Apotex submitted to the FDA, a certification that the claims of the '148 patent are purportedly invalid, unenforceable, and/or will not be infringed.

66.     On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

67.     Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Apotex's ANDA seeking approval for the commercial manufacture, use, or sale of Apotex's generic products before the expiration date of the '148 patent, constitutes infringement, either literally or under the doctrine of equivalents.

68.     After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '148 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '148 patent and any additional periods of exclusivity.

69.     Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '148 patent.

70.     Apotex had knowledge of the '148 patent, as evidenced by Apotex's Notice Letter, and, by its promotional activities and proposed package insert for Apotex's generic products,

knows or should know that it will induce direct infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents.

71.    Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '148 patent.

72.    The offering to sell, sale, making, and/or importation of Apotex's generic products will actively induce infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents. Apotex has knowledge and is aware of the '148 patent, as evidenced by Apotex's Notice Letter.

73.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

74.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

75.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '148 patent.

76.    Plaintiffs do not have an adequate remedy at law.

**COUNT II**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY APOTEX OF THE '148 PATENT**

77.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

78.    Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

79.     Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '148 patent.

80.     On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

81.     After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '148 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '148 patent and any additional periods of exclusivity.

82.     Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '148 patent.

83.     Apotex had knowledge of the '148 patent, as evidenced by Apotex's Notice Letter, and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents.

84.     Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '148 patent.

85.     The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents. Apotex has knowledge and is aware of the '148 patent, as evidenced by Apotex's Notice Letter.

86.     If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

87.     Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

88.     On information and belief, Apotex's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Apotex's generic products in the United States, will begin immediately after FDA approves Apotex's generic products. Such activity before the expiration of the '148 patent will constitute infringement of one or more claims of the '148 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

89.     As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Apotex concerning liability for the infringement of the '148 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

90.     Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '148 patent.

91.     Plaintiffs do not have an adequate remedy at law.

**COUNT III**
**INFRINGEMENT BY APOTEX OF THE '259 PATENT**

92.     Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

93.     Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '259 patent.

94.     On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

95.     Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Apotex's ANDA seeking approval for the commercial manufacture, use, or sale of Apotex's generic products before the expiration date of the '259 patent, constitutes infringement, either literally or under the doctrine of equivalents.

96.     After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '259 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '259 patent and any additional periods of exclusivity.

97.     Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '259 patent.

98.     Apotex had knowledge of the '259 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents.

99.    Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '259 patent.

100.    The offering to sell, sale, making, and/or importation of Apotex's generic products will actively induce infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '259 patent.

101.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

102.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

103.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '259 patent.

104.    Plaintiffs do not have an adequate remedy at law.

**COUNT IV**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY APOTEX OF THE '259 PATENT**

105.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

106.    Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

107.     Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '259 patent.

108.     On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

109.     After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '259 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '259 patent and any additional periods of exclusivity.

110.     Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '259 patent.

111.     Apotex had knowledge of the '259 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents.

112.     Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '259 patent.

113.    The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '259 patent.

114.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

115.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

116.    On information and belief, Apotex's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Apotex's generic products in the United States, will begin immediately after FDA approves Apotex's generic products. Such activity before the expiration of the '259 patent will constitute infringement of one or more claims of the '259 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

117.    As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Apotex concerning liability for the infringement of the '259 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

118.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '259 patent.

119.    Plaintiffs do not have an adequate remedy at law.

## COUNT V
## INFRINGEMENT BY APOTEX OF THE '545 PATENT

120.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

121.    Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '545 patent.

122.    On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

123.    Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Apotex's ANDA seeking approval for the commercial manufacture, use, or sale of Apotex's generic products before the expiration date of the '545 patent, constitutes infringement, either literally or under the doctrine of equivalents.

124.    After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '545 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '545 patent and any additional periods of exclusivity.

125.    Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '545 patent.

126.    Apotex had knowledge of the '545 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents.

127.    Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '545 patent.

128.    The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '545 patent.

129.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

130.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

131.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '545 patent.

132.    Plaintiffs do not have an adequate remedy at law.

**COUNT VI**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY APOTEX OF THE '545 PATENT**

133.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

134.    Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

135.    Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '545 patent.

136.    On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

137.    After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '545 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '545 patent and any additional periods of exclusivity.

138.    Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '545 patent.

139.    Apotex had knowledge of the '545 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents.

140.    Apotex is aware and/or has knowledge that it is advertising an infringing use and/or instructing how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '545 patent.

141.    The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '545 patent.

142.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

143.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

144.    On information and belief, Apotex's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Apotex's generic products in the United States, will begin immediately after FDA approves Apotex's generic products. Such activity before the expiration of the '545 patent will constitute infringement of one or more claims of the '545 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

145.    As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Apotex concerning liability for the infringement of the '545 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

146.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '545 patent.

147.    Plaintiffs do not have an adequate remedy at law.

### COUNT VII
### INFRINGEMENT BY APOTEX OF THE '598 PATENT

148.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

149. This Complaint provides notice of the '598 patent to the extent that Apotex did not already have notice of this patent.

150. Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '598 patent.

151. On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

152. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Apotex's ANDA seeking approval for the commercial manufacture, use, or sale of Apotex's generic products before the expiration date of the '598 patent, constitutes infringement, either literally or under the doctrine of equivalents.

153. After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '598 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '598 patent and any additional periods of exclusivity.

154. Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '598 patent.

155. Apotex had knowledge of the '598 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce

direct infringement of at least one of the claims of the '598 patent, either literally or under the doctrine of equivalents.

156.    Apotex is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '598 patent.

157.    The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '598 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '598 patent.

158.    If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

159.    Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

160.    Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '598 patent.

161.    Plaintiffs do not have an adequate remedy at law.

**COUNT VIII**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY APOTEX OF THE '598 PATENT**

162.    Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

163.    Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

164.    This Complaint provides notice of the '598 patent to the extent that Apotex did not already have notice of this patent.

165.    Apotex filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the '598 patent.

166.    On information and belief, Apotex represented to the FDA that Apotex's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

167.    After FDA approval of Apotex's ANDA, Apotex will infringe one or more claims of the '598 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Apotex's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Apotex's ANDA shall be no earlier than the expiration of the '598 patent and any additional periods of exclusivity.

168.    Apotex knows or should know, and intends that healthcare providers will prescribe and patients will take Apotex's generic products for which approval is sought in Apotex's ANDA, and therefore will infringe at least one claim in the '598 patent.

169.    Apotex had knowledge of the '598 patent and, by its promotional activities and proposed package insert for Apotex's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '598 patent, either literally or under the doctrine of equivalents.

170.    Apotex is aware and/or has knowledge that it is advertising an infringing use and/or instructing how to engage in an infringing use because healthcare professionals and/or patients

will use Apotex's generic products according to the instructions in the proposed package insert in a way that directly infringes the '598 patent.

171.     The offering to sell, sale, making, and/or importation of Apotex's generic products would actively induce infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents. On information and belief, Apotex has knowledge and is aware of the '598 patent.

172.     If Apotex's ANDA is approved, Apotex intends to and will offer to sell, sell, and/or import in the United States Apotex's generic products.

173.     Apotex's actions relating to Apotex's ANDA complained of herein were done by and for the benefit of Apotex.

174.     On information and belief, Apotex's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Apotex's generic products in the United States, will begin immediately after FDA approves Apotex's generic products. Such activity before the expiration of the '598 patent will constitute infringement of one or more claims of the '598 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

175.     As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Apotex concerning liability for the infringement of the '598 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

176.     Plaintiffs will be irreparably harmed if Apotex is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '598 patent.

177.     Plaintiffs do not have an adequate remedy at law.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     The entry of judgment under 35 U.S.C. § 271(e)(2)(A) that Apotex has infringed at least one claim of the Patents-in-Suit through Apotex's submission of ANDA No. 220979 to the FDA to obtain approval to manufacture, use, import, offer to sell, and/or sell Apotex's generic products in the United States before the expiration of the Patents-in-Suit;

B.     The entry of judgment that Apotex's making, using, offering to sell, selling, or importing Apotex's generic products prior to the expiration of the Patents-in-Suit will infringe, actively induce infringement, and/or contribute to the infringement of Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (c);

C.     A declaration under 28 U.S.C. § 2201 that if Apotex, its officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with it or on its behalf, engage in the commercial manufacture, use, offer for sale, sale or importation of Apotex's generic products prior to the expiration of the Patents-in-Suit, it will constitute an act of infringement pursuant to 35 U.S.C. § 271(a), (b), and/or (c);

D.     The issuance of an order that the effective date of any FDA approval of Apotex's generic products shall be no earlier than the expiration of the Patents-in-Suit and any additional periods of exclusivity, in accordance with 35 U.S.C. § 271(e)(4)(A);

E.     The entry of a permanent injunction, enjoining Apotex and all persons acting in concert with Apotex from commercially manufacturing, using, offering for sale, or selling Apotex's generic products within the United States, or importing Apotex's generic products into the United States, until the expiration of the Patents-in-Suit, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

29

F.      The entry of a permanent injunction, enjoining Apotex and all persons acting in concert with Apotex from seeking, obtaining, or maintaining approval of the ANDA until the expiration of the Patents-in-Suit, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

G.      The issuance of a declaration that this is an exceptional case and an award to Plaintiffs of costs, expenses, and disbursements in this action, including reasonable attorney fees, pursuant to 35 U.S.C. §§ 285 and 271(e)(4);

H.      An award to Plaintiffs of any further appropriate relief under 35 U.S.C. § 271(e)(4); and

I.      An award to Plaintiffs of any further and additional relief that this Court deems just and proper.

Dated: December 23, 2025

/s/ *Jose L. Linares*

Jose L. Linares
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
4 Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 622-4444
jlinares@mccarter.com
mmakhail@mccarter.com

**OF COUNSEL**:

William B. Raich (*pro hac vice* forthcoming)
Jennifer H. Roscetti (*pro hac vice* forthcoming)
Cora R. Holt (*pro hac vice* forthcoming)
Lauren J. Robinson (*pro hac vice* forthcoming)
Drew D. Christie (*pro hac vice* forthcoming)
Yoonjin Lee (*pro hac vice* forthcoming)
Kenneth S. Guerra (*pro hac vice* forthcoming)
Emma N. Ng (*pro hac vice* forthcoming)
Shivani Karthikeyan (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW,**

**GARRETT & DUNNER, LLP**
901 New York Ave, NW
Washington, DC 20001
(202) 408-4210
william.raich@finnegan.com
jennifer.roscetti@finnegan.com
cora.holt@finnegan.com
lauren.robinson@finnegan.com
drew.christie@finnegan.com
yoonjin.lee@finnegan.com
kenneth.guerra@finnegan.com
emma.ng@finnegan.com
shivani.karthikeyan@finnegan.com

Shannon M. Patrick (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363
(404) 653-6400
shannon.patrick@finnegan.com

*Attorneys for Plaintiffs AbbVie and
Allergan*

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceedings.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 23, 2025                    */s/ Jose L. Linares*
                                            Jose L. Linares